FILED

2010 Mar-23  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| TAMMY FRANKLIN | ) | |
| o/b/o B.P.F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:08-CV-2346-LSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Tammy Franklin, on behalf of her minor child, B.P.F. ("Claimant"), appeals the decision of the Administrative Law Judge ("ALJ") denying her application for Child's Supplemental Security Income ("SSI"). Ms. Franklin has timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Claimant was fourteen years old and in the ninth grade at the time of

the ALJ's decision.  (Tr. at 20, 187.)  Plaintiff believes that her daughter became disabled on February 20, 2000, due to Tourette's Syndrome/obsessive compulsive disorder, bilateral hearing loss, and possible depression and anxiety issues.  *Id*. at  170-72.

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act which amended the statutory standard for determining child SSI.  *See* P.L. No. 104-193, 110 Stat. 2105.  The revised standard states that:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(1).  On September 11, 2000, the SSA published the final rules implementing the act.  *See* 65 Fed. Reg. 5471.  These rules became effective on January 2, 2001.  *See id.*

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process.  *See* 20 C.F.R. § 416.924(a).  The first step requires a determination of whether the child is "doing substantial

gainful activity." *Id*.  If he or she is, then the child is not disabled and the evaluation stops.  *Id*.  If the child is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether he or she suffers from a severe impairment or combination of impairments.  *Id*.  An impairment is considered "severe" if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  If the impairments are not severe, the analysis stops.  20 C.F.R. § 416.924(a).  However, if the impairments are "severe," the third step requires the ALJ to determine if one or more of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404.  *Id*.  If the child has such an impairment and it meets the durational requirement, the ALJ will find that he or she is disabled.  *Id*.  If they do not meet each of the criteria enumerated in the listings, the ALJ must decide whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment.  *See* 20 C.F.R. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as:  how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures

or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health.   20 C.F.R. § 416.926a.  To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.[1]  *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that Claimant has not engaged in substantial gainful activity at any time relevant to the decision.  (Tr. at 20.)  Based on the evidence presented, the ALJ concluded that her Tourette's Syndrome/obsessive compulsive disorder, hearing loss,

---

[1]For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning.  *See* 20 C.F.R. § 416.926a(e)(2) and (3).

learning disability, and affective disorder are considered "severe" according to 20 C.F.R. § 416.924(c). *Id.* Nonetheless, the ALJ determined that these impairments, when considered singularly or in combination, did not medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. In evaluating functional equivalence, the ALJ found that Claimant does not have an impairment that meets or medically equals the listings in 20 CFR 416.924(d) and 416.926(a). *Id.* In the domains of acquiring and using information and attending and completing tasks, the ALJ found Claimant's impairments caused a "less than marked limitation." *Id.* at 24-25. In the area of interacting and relating with others, the ALJ found a "marked limitation." *Id.* at 26. In the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being, the ALJ found Claimant has "no limitation." *Id.* at 27-28. The ALJ concluded by finding that "[b]ased on the application for supplemental security income filed on July 5, 2005, claimant is not disabled under Section 1614(a)(3)(c) of the Social Security Act." *Id.* at 29.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's

decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of the claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded for two reasons. (Doc. 7 at 22-31.) First, Plaintiff claims the "ALJ's finding that [Claimant] has a 'less than marked limitation' in the domain of attending and completing tasks is not supported by substantial evidence." *Id*. at 22. Second, Plaintiff contends the "ALJ's finding that [Claimant's] Tourette's Syndrome does not meet the persistent and recurrent symptom requirement of Rule 112.07 is not supported by substantial evidence." *Id*. at 29.

A.    Attending and Completing Tasks.

Claimant alleges that while the ALJ was correct in finding a marked limitation in interacting and relating with others, he "erred in finding that [Claimant] does not have an impairment in two domains ('Attending and Completing Tasks' and 'Interacting and Relating with Others') of functioning."  (Doc. 7 at 28.)

In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists.  20 C.F.R. § 416.913(a).  The ALJ can consider evidence not only from medical sources, but also "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments."  20 C.F.R. § 416.913(d).  These "other sources" can include school teachers, counselors, developmental center workers, and parents.  *Id.*  "The better an explanation a source provides for an opinion, the more weight we will give that opinion."  20 C.F.R. § 416.927(d)(3).  The weight given to opinions of non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions."  *Id.*

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, in addition to how well the child begins, carries through, and finishes activities, including the pace at which the child performs the activities and the ease of changing the activities. 20 C.F.R. § 416.926a(h). An adolescent, without an impairment, should be able to do the following:

> [Y]ou should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments. In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v). 20 C.F.R. §416.926a(h)(3) provides examples of limited functioning in the domain of attending and completing tasks, specifically stating that the examples "do not necessarily describe a 'marked' or 'extreme' limitation." These examples include the following: being easily startled, distracted, or overreactive to sounds, sights,

movements, or touch; slow to focus on, or fail to complete activities of interest to you; repeatedly become sidetracked or frequently interrupt others; easily frustrated and give up on tasks; and require extra supervision to keep you engaged in an activity. *Id*.

In determining that Claimant has a less than marked limitation in attending and completing tasks, the ALJ considered both medical and school records, in addition to Plaintiff's testimony. (Tr. at 20-25.) Claimant was treated by Dr. Leon Dure, a pediatric neurologist, for her Tourette's Syndrome. *Id*. at 20, 113-118. Dr. Dure saw Claimant on four occasions, all of which preceded the date Claimant filed her application for disability (July 5, 2005). When Dr. Dure first diagnosed Plaintiff with Tourette's syndrome on the basis of a chronic vocal tic in April 2000, he prescribed a very low dose of Clonidine. *Id*. at 20, 117-18. Upon follow-up, on January 19, 2001, Dr. Dure noted Claimant "responded relatively well to low-dose clonidine" and that clonidine seemed to be taking care of Claimant's issues related to hyperactivity and inattentiveness. *Id*. at 116. Then, on March 7, 2003, Dr. Dure noted that although Claimant "probably does have significant attentional problems from her mother's history," and she continues to have

tics that include snorting, humming and sighing sounds, Claimant's vocal tics "were not particularly problematic during the visit."  He noted that "her main problem appears to be with inattentiveness and difficulty concentrating."  Dr. Dure continued her on Clonidine and prescribed Ritalin as well.  *Id.* at 114.  There are no medical records before this Court of Dr. Dure examining Claimant after the date Claimant filed her application for disability.

The ALJ also discussed the psychological evaluation performed by Dr. June Nichols in September 2005.  (Tr. at 20.)  Dr. Nichols noted that Claimant suffered from "involuntary tics which involve head movements, upper trunk movements, snorting, humming, and whistling," in addition to symptoms of Obsessive-Compulsive Disorder.  *Id.* at 143.  Her speech was "clear and normal in rate," but was accompanied by symptoms of Tourettes's Disorder.  *Id.* at 20, 144.  As for daily activities, Claimant indicated that she enjoys drawing, singing and modeling for a department store, she attends church every Sunday, is a member of the model group, and is in the Show Choir at school.  *Id.* at 20, 145.  Dr. Nichols concluded that while Claimant "will be unable to function in an age appropriate

manner socially and behaviorally due to her symptoms, [h]er cognitive, communicative and adaptive skills are age appropriate.  She would have no difficulty relating to peers and authority figures alike."  *Id*. at 20, 145.  The ALJ stated that he did consider the opinion of Dr. Nichols, however, the ALJ found that her opinion as to Claimant's inability to function in an age appropriate manner socially and behaviorally "is not consistent with her report in that [C]laimant is able to attend school, sing, attend church, and model for a department store."  *Id*. at 23.

The ALJ also considered Claimant's academic history.  (Tr. at 21, 25.)  At the time of the ALJ's decision, Claimant was in the ninth grade.  *Id*. at 21.  School records showed Claimant had achieved passing grades during the first six weeks of her ninth grade year, as well as during the prior year.  *Id*. at 21, 106, 111-12.  Although she excels in reading, she struggles with math but is only working one grade level behind in that subject.  *Id*. at 101.  State assessment scores showed she exceeded reading standards and that math standards were partially met.  *Id*. at 21, 101-12.  As to her SAT scores, she scored average in reading and in math.  *Id*.  According to staff at Claimant's high school, Claimant "struggles with organization", but is "very successful

at completing writing assignments and grammar tests." *Id*. at 101.  The staff also noted that Claimant will earn credits toward a high school diploma and plans to attend college.  *Id*.  The ALJ found it particularly important that Claimant "has been able to focus sufficiently in order to successfully complete all grades of education to date."  *Id*. at 25.

Despite Claimant's more recent academic records, Plaintiff relies heavily on a questionnaire completed in September 2005 by Claimant's seventh grade reading teacher, Summer Thompson, in claiming that the ALJ erred in his conclusion.  (Doc. 7 at 23-24, Tr. at 54-61.)  As Plaintiff noted, Ms. Thompson reported that "[Claimant] asks for help often.  She needs to be constantly reminded how to do math problems, especially [those] with a lot of steps."  (Doc. 7 at 23, Tr. at 56.)  Ms. Thompson also noted "an obvious problem" completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace; "a slight problem" paying attention, refocusing to task, carrying out single-step and multi-step instructions, waiting to take turns, and organizing her own things; and "a serious problem" focusing long enough to finish assigned activities or tasks.  *Id*.  What Plaintiff fails to mention, however, is that Ms.

Thompson noted Claimant had no problems changing from one activity to another without being disruptive and working without distracting herself or others. *Id*. Further, it was noted that Claimant has Tourette's syndrome, and that "sometimes makes her fidgety," but there was no mention of vocal or physical tics. *Id*. at 60. Also important is the fact that at the time the questionnaire was completed, Ms. Thompson had only known Claimant for three months, and while Ms. Thompson reported Claimant needed "constant reminders on how to do math problems", Ms. Thompson was Claimant's reading teacher, not her math teacher. *Id*. at 54, 56. Lastly, although the ALJ specifically referenced the questionnaire and the teacher's opinion of "slight to obvious problems in [attending and completing tasks] domain, as well as a serious problem focusing long enough to finish assigned activity or tasks", when considering the entirety of the record, the ALJ did not find the questionnaire sufficient to warrant a finding of marked limitations. *Id*. at 25.

Plaintiff further relies on the testimony of Claimant, as well as her own testimony, as to Claimant's problems with attending and completing tasks. (Doc. 7 at 24.) As noted by the ALJ, Claimant testified that her

Tourette's Syndrome and hearing aids lead to others teasing her at school. (Tr. at 22.)  Claimant claimed she is sad most of the time and wishes she had more friends.  *Id.*  She also testified that she is forgetful, easily angered, and gets into arguments with friends.  *Id.*  Plaintiff also testified as to Claimant's forgetfulness, in addition to her poor organization, constantly losing things, her sadness and frequent crying, Claimant sometimes saying she wished she were dead, and Claimant isolating herself in her room after school.  *Id.* at 23.  However, the ALJ determined that the testimony was not entirely credible as there was also testimony and evidence that Claimant attends school, draws, sings, models for a department store, attends church every Sunday, sings at church, rides the bus to school and does chores at home.[2]  *Id.*

---

[2]It should also be noted that Plaintiff contends Claimant's forgetfulness is evidenced by the fact that she forgot to bring her hearing aids to the disability hearing. (Doc. 7 at 24.)  However, Plaintiff also stated that Claimant often took the hearing aids out because of the little sounds (such as the refrigerator running or ice cubes dropping) that she did not pick up without them.  *Id.* at 11, Tr. at 215-16.  Claimant also indicated that she is teased at school because of her Tourette's and her hearing aids.  *Id.* at 3, Tr. at 188.

Plaintiff further claims Claimant has trouble remembering school assignments, forgets her homework, loses her books, and her "messy and unlivable bedroom is an indication of her total disorganization without help."  *Id.*, Tr. at 191-92, 203-06. However, none of this rises to a level of marked development, nor does it appear to greatly affect her performance in school.  In fact, much of this could actually be

Based on the evidence of record, this Court finds the ALJ was correct in determining Claimant has a less than marked limitation in the domain of attending and completing tasks.[3]

B.    Meeting a Listed Impairment.

Claimant alleges, that in the alternative to her above contention, she "may be presumptively disabled under Rule 112.07(A)(2), Pt. 404, Subpt. P, App.1." (Doc. 7 at 28.)

A plaintiff is disabled if his impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement."

—————————————

attributed to normal teenage behavior.

[3]In furtherance of her argument, Plaintiff points to a Northern District of New York case, *Armstead o/b/o Villanueva v. Astrue*, 2008 WL 4517813 (N.D.N.Y.), in which the court found the ALJ erred in finding the child had "a less than marked impairment" in the domain of attending and completing tasks. (Doc. 7 at 25.) Not only is *Armstead* not binding on this Court, it is distinguishable from the present case in that the child in *Armstead* was diagnosed with Attention Deficit Hyperactivity Disorder, needed frequent reminders and supervision to care for himself, was unsuccessful academically, required one-to-one monitoring or a small group to accomplish any task, would freeze up when frustrated, had trouble sitting, required questions to be repeated several times before he could answer, and the examining psychiatrist found the child had only a "fair to poor" ability to concentrate. *Id*. at *1-3, 6-13, 20.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)).  "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)).   Furthermore, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing).  Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is medical equivalency to a listing if the listing is defined in terms of functional criteria.  *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir.1993).

20 C.F.R. pt. 404, subpt. P, app. 1, § 112.07, which addresses tic disorders, provides that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied."  The relevant portion of Section A requires "medically documented findings of . . .

[p]ersistent and recurrent involuntary, repetitive, rapid, purposeless motor movements affecting multiple muscle groups with multiple vocal tics." The ALJ determined that the requirements in Section A were not met in that Claimant's symptoms "do not rise to the level of severity set out in this listing." (Tr. at 21.) Specifically, the ALJ found, "Claimant has been prescribed medication which helps this disorder, and the record does not show persistent and recurrent symptoms involving multiple muscle groups with multiple vocal tics." *Id*. As previously discussed, the record supports the ALJ's conclusion. Although Dr. Dure's treatment notes all predate Plaintiff's application, he did not make any medical findings regarding the persistence, scope, and duration of Claimant's alleged tics . (Tr. at 113-19.) Further, while Dr. Nichols noted movements and sounds on September 27, 2005 (Tr. at 144), this does not satisfy the requirements of Section A.

Even if Claimant had met the requirements of Section A, Section B would still have to be satisfied as well. Section B requires Claimant's disorder result in age-appropriate functioning in at least two of the following four areas: cognitive/communicative, social, personal, and maintenance of concentration, persistence or pace. 20 C.F.R. 404, subpt.

P, app. 1, §§ 112.07(B), 112.02(B).  As previously discussed, while the evidence of record supports the ALJ's finding of a marked limitation in the domain of interacting and relating to others, it further supports a conclusion that Claimant does not have marked limitations in the other domains. Therefore, Claimant is not disabled under Listing 112.07.

IV.    Conclusion.

Upon close review of the administrative record, and considering all of Plaintiff's arguments, the Court finds that the ALJ's decision is supported by substantial evidence.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 23rd day of March 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**